Good morning, may it please the court. My name is Brian McBurney. I represent the Freeburg Community School District. In this case, this is a small contained case, a manifest weight case. In this particular instance, Mr. Toma had hand complaints going back to 2008. What's important to keep in mind in this case is that he had, at that same time, three ongoing workers' compensation claims related to his back. The issue in this case is the manifestation date, and it is our argument that there was no factual basis for the Commission's decision in this case. The arbitrator in this case states in her award that it became apparent to the petitioner that he had work-related carpal tunnel in March of 2011 when he was told by a hand surgeon that he had carpal tunnel and that it was work-related. What the arbitrator in the Commission in adopting the award in this case did is that's factually not true. If you look at the evidence in this case, her discussion that it was apparent to the petitioner in March 2011 that his hand condition was work-related is not supported by any evidence. Let's roll back. This gentleman went to see a physician, Dr. Tome, in June 10, 2010. He went there. He had an ongoing back claim, workers' compensation back claim, where he claims his back is related to his work. He testified that he went to go see Dr. Tome because of his hand complaint. He sought treatment on June 10, 2010 for complaints to his hand. He said, I thought that was related to my back. I thought my hand symptoms were related to my back. So at that moment, what the Commission and the arbitrator missed was he thought at that point in time, my hand complaints were work-related. That's why I went to the doctor. What happened? The doctor examined him and said, it's not related to your back. It's carpal tunnel syndrome. It's not your back. It's carpal tunnel syndrome. So what does the standard of the Supreme Court tell us? Let's focus in on this. He goes there believing that this hand condition is back-related. And he knows that his back injury is work-related. But then he's told by Dr. Tome, it's not related to your back. You have carpal tunnel. What places him on notice that that's related to work? Because Tome testifies there was absolutely no discussion of cause. And that's way back in June of 2010. So now we know the condition, but he doesn't know the cause. No one's told him about the cause until Brown tells him, March 28, 2011, that he suspects it's work-related. And they fix that as the manifestation date. Well, the standard, Your Honor, is not when he knew within a reasonable degree of medical certainty that it was work-related. Duran doesn't say that. Plainly apparent. Plainly apparent. To a reasonable person. But wait a minute. But the reasonable person goes in believing that his hand difficulty is related to his back. That's related to work. If it actually was related to his back, you've got the manifestation date. But now the doctor tells him it's not related to your back. It's carpal tunnel. Where does he know that the carpal tunnel is work-related? He doesn't need to know, Your Honor. Why would he appear on it? It's not readily apparent. Not when he knew. Not when he knew beyond a reasonable degree of medical certainty. And that's what the arbitrator's decision seems to say. But that's not what the Supreme Court tells us. It's when a reasonable person is readily apparent to a reasonable person. And here's one thing. I've focused on this throughout these appeals. The commission, the arbitrator, never even discusses his admission at trial that, you're right, goes in to see Dr. Tong. He thinks it's work-related and it's related to his back. Dr. Tong says, no, it's carpal tunnel. Well, I asked him, would you suspect it at that time that work had something to do with it? I suspected it could have something to do with it, yes. No question. It was back-related in his mind at that point in time, so he did think it was work-related. Now Tong tells him, it's not back-related, it's carpal tunnel. Now, did anyone ever ask him during that course, did you believe in June of 2008 that the carpal tunnel condition that was diagnosed by Dr. Tong was related to your work? No one ever asked him that question. He was never asked again until he was asked about Dr. Brown. And if you go through that colloquy in the record, you're going to find out, when did you actually suspect that this was work-related? His answer, March 2011. And that would be the Dr. Brown appointment. But, Your Honor, I have to disagree with regard to this. If you look at my brief on page 10, I laid it all out. And I don't think there's a disconnect where he said, oh, okay, it's not related to my back. I don't think it's work-related. I don't think that ever happened. I asked him about that. I asked him, you went in because you thought it was work-related and it was related to your back. Yes. But then Dr. Tong disabused you of that. He said you had carpal tunnel. He goes, yeah, he said I had carpal tunnel, yes. And in fact, Dr. Tong testified yesterday, we'd taken a deposition of Dr. Tong the day before the hearing. He told you your hand problems were not related to your back. Correct. The answer is correct. So you knew in June of 2010, your hand problems were not related to your back. Right. So did you suspect at that time maybe work had something to do with this? I suspected it could have something to do with it, yes. And certainly before you saw Dr. Brown, you suspected it because you brought a very detailed job description with you to Dr. Brown's office. Isn't that correct? Yes. So you knew before you saw Dr. Brown, you suspected your work had something to do with your hands. Correct. So I think that's one analysis, but I think we've addressed it. That is kind of getting at what I understood the question is from Justice Hoffman. It's just at the end, related to your hand. Okay. I mean, that was the first time we heard hand in that colloquy. That is correct. Right. And I think Justice Hoffman's analysis or question was, it can be read the other way, but you're saying that last question takes it all the way back to the beginning of that colloquy that you're talking about hand related to work. I believe so. Let me try these series of questions. Had a doctor ever told you prior to when you saw Dr. Brown on March the 28th of 2011 that your carpal tunnel was related to your work? Answer, no. Okay. And he asked you some questions that you brought a job description with you to Dr. Brown. Why did you do that? Answer. Dr. Garnett told me to make a job description so Dr. Brown could see the kind of work activities that I had done. He was told to bring that job description. And then it was asked, so is it the first time that you believe that there was actually a relationship between your work activities and your employer and the carpal tunnel syndrome? Answer, March 2011. Now, I don't dispute that this man suspected in June of 2010 when he saw Tome that his hands were work related because he thought it was caused by his back, which was work related. But Tome tells him, no, it's not your back. It's carpal tunnel. But never tells him the cause. And he turns around then and testifies that the first time he actually suspected that the carpal tunnel was work related was March of 2011. Now, I readily agree with you. The Commission could have decided it the other way. They could have turned around and said, we're not buying this. You know. But they didn't. And my question is, why is it against the manifest way of the evidence? Aren't his answers on redirect sufficient to support their decision? No, I don't think so. Because if you look, think about this. He goes to see Dr. Gurnett. And the record shows he sees Gurnett, I think, one time in November and again in January of 2011. And they have a discussion about the carpal tunnel. And in the course of this discussion, according to what he just testified to, Dr. Gurnett says, well, you want to go see someone and you want to take a detailed job description. Now, who in the world does that unless there's a discussion about work and carpal tunnel? So his, frankly, his saying, well, I was a babe in the woods. I didn't know until Brown told me March 11 is not a credible statement. He's having discussions with other treating physicians about work relatedness in November and January of 2011. Now, what specifically is the manifestation date that you're suggesting? June the 10th, 2011, when he was diagnosed. With Dr. Tone. With Dr. Tone. Now, he had an EMG that confirmed it, June the 24th, either date. He last stopped working at all August the 4th, 2010. That's another one to use, but I think it's the date of diagnosis. When did he first receive treatment for the carpal tunnel? June the 10th, 2011, when he went to go see Dr. Tone. And then he had an EMG on June the 24th. You're saying June the 10th, 2011. You mean 2010. 2010, correct. Yeah, but the actual treatment for carpal tunnel you say first started in June of 2010? Well, when he went to see Dr. Tone for his hand complaints. I'm not talking about hand complaints. I'm talking specifically as to treatment for carpal tunnel. He hasn't had any yet. Okay. Certainly, that diagnosis wasn't made until Dr. Brown made it, true? The diagnosis of carpal tunnel? Yeah. No, the diagnosis was made June of 2010, but Dr. Tone told him to get carpal tunnel in the petition test, but I knew I had carpal tunnel June the 10th. The diagnosis is not disputed. It's not argued anywhere by the petitioner that I didn't know I had carpal tunnel. He knew he had carpal tunnel June 2010, and justice is correct. There was a discussion about the diagnosis, but Dr. Tone said I didn't talk about causation. I don't know how credible that is. In any event, your argument is going to be this is a reasonable person. When it's readily apparent, it's not totally subjective. I mean, somebody could ignore the obvious you're saying. This is what a reasonable person would perceive to be readily apparent to them. I think that's a fair recitation. The difficulty I have with these cases is obviously Durant, because it makes no sense. You have a commission finding that when a claimant says, I know I have an injury, and I suspect that that injury is job-related, is not necessarily a manifestation date because no doctor told them that it was job-related. And that's exactly what happened in Durant. In Durant, the commission said, no, the manifestation date was a date when a reasonable person would suspect that it's job-related, and the Supreme Court said, oh, no, because it wasn't plainly apparent because no doctor had told them that. And in this particular case, this fits into Durant. No doctor told him that it was work-related until March 2011. Now, would a reasonable person suspect it? Probably so, but that's not Durant. Well, you know, the question is, and what the standard seems to be applied, and we need to be clear about this, is, well, is it the date that an opinion or causation opinion is directed to an employee within a reasonable medical certainty? And that's not been the law. And Durant doesn't say that's the law. I think you're saying that they imply that, but they don't say that. They say plainly apparent, and it's not plainly apparent until a doctor tells you that. Well, I don't think Durant says that. I mean, I'm reading from this that you have to have a medical causation opinion in hand delivered to a person, and that's when it's apparent to him. I think it was apparent to him before that. If you say apparent, I think it was apparent to him. I suspect it. He's suspected for years. Durant says plainly apparent, and that's more than just appearance. Well, I think it was plainly apparent too. Your Honor, I think it was plainly apparent to him. Yeah, but some people are interpreting Durant to say plainly apparent can only happen with the medical. I don't think that's the case. Thank you. Counsel, you may respond. Thank you, Your Honor. May it please the Court, Mr. McBrady. Jim Keefe here on behalf of Jim Toma. Yeah, if we want to look at the language plainly apparent, I mean, double-check the dictionary, you don't really have to, but, I mean, it means unequivocally clear or obvious. And that can only be determined by a medical practitioner? I don't think. Someone informed. Correct. No, no, and then communicated to the claimant? I don't know how else a layperson, it could become plainly apparent to them that they have work-related carpal tunnel. I think if you take Durant seriously, what it really means is it has to be more than just a suspicion. It has to be something more than a suspicion, because clearly in Durant she had a suspicion. She said she did. Correct, and that fits with that term, plainly apparent. Yeah, I think that's why they said it. I think they said it because they want it to be more than the discovery rule, more than merely a suspicion by a reasonable person. Something had to be more, and in Durant it was a doctor telling them. And in this particular case, it's the suspicion of work-related carpal tunnel, not a suspicion of work-related hand injury related to a bat. Correct, and I think Durant pretty much followed the Peoria and Oscar Mayer cases. Again, they kept using that term, plainly apparent. Now, they did look at other factors in terms of date of diagnosis. That should be considered a date that you actually get medical treatment, severity of the injury. And in this case, I think those factors also all point to March 28, 2011. Admittedly, the diagnosis was in June of 2010, no doubt. He had the EMG. There's your date of diagnosis. But I think Cousel is incorrect when he says he sought treatment for his hands with Dr. Tom in June of 2010. That was an incidental finding as part of his workup for his back. He was already treating with Dr. Tom for his back, which I believe he testified to, and the records are very clear, and Dr. Tom even testified to it. Look, I ran an EMG because he did have complaints in his hands, but he was treating him for his back, and so I diagnosed him with carpal tunnel, and so Dr. Tom's deposition was taken. And Tom's like, look, he had no more interest in carpal tunnel than the man on the moon at that point. He has a very serious back condition. That's all he wanted to talk about. So I guess what he's referencing that my client said on cross-examination about suspecting it could be work-related, then I think he was talking about more in, well, in retrospect now, I guess that's probably true, because that's why I asked him on redirected examination, when is it that you actually believe that this was work-related? Well, it's after I talked to Dr. Brown, and I think that's supported. If you look at Dr. Brown's intake form, it says, is this a work-related claim? He didn't even mark yes. Well, how could that be plainly apparent to him that it's work-related? Once again, it's not to him. The standard is to a reasonable person. To a reasonable person. Right. And in this case, again, how could it be plainly apparent, going back to what you said earlier, unless the doctor tells him? And as Dr. Tom said, we didn't discuss causation back in 2010. We didn't discuss it until 2011. So unless there's any further questions. Thank you, counsel. Counsel, you may respond. Briefly, Your Honor. Thank you for your patience. This is more than just suspicion in this case. I think the evidence is clear. It's more than suspicion. Well, once again, he's discussing his hand with Dr. Brunette, who's a back surgeon, about getting your list of all your work activities. There's more than that here. This is more than suspicion. And it's plainly apparent to a reasonable person that this was work-related. Thank you, counsel, both for your arguments. This matter will be taken under advisement. A written disposition shall issue.